BAILEY et al. v. UNITED STATES.

No. 6007.

Circuit Court of Appeals, Fifth Circuit.

Dec. 3, 1931.

Julian C. Ryer, of Brooklyn, N. Y., for appellants.

Chas. L. Redding, U. S. Atty., of Savannah, Ga.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellants were convicted under the first, second, and fourth counts of an indictment which contained nine counts. The first count charged the appellants and Mary M. Thompson, Wilson Jenkins, and others with conspiring to smuggle intoxicating liquor from named foreign countries to points in the Southern District of Georgia, and to facilitate the transportation of such liquor from the places where it was introduced into the United States to Savannah in that district and to other towns and cities in the United States to the grand jurors unknown. The second and fourth counts each charged the appellants and others with continuously, at divers times and on divers dates to the grand jury unknown, beginning on January 1, 1929, and continuing to the finding and return of the indictment, at divers places within the Southern District of Georgia, smuggling into the United States from named foreign countries ten thousand quarts of intoxicating liquor. The second and fourth counts were demurred to on the grounds of duplicity and insufficiency in law. The demurrers were overruled.

Indictments in the same form as counts 2 and 4 have been held by this court to be bad. Curtis v. United States, 38 F.(2d) 450; Sanchez v. United States, 52 F.(2d) 1086, U. S. Circuit Court of Appeals, Fifth Circuit, October 27, 1931. Those counts were subject to the demurrers interposed to them. The convictions under those counts cannot be sustained.

The trial was entered upon on Monday, March 31, 1930. The jury was called, and

the court asked prospective jurors questions on voir dire corresponding with those prescribed by a Georgia statute, namely: "Have you, from having seen the crime committed, or having heard any of the testimony delivered on oath, formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar?" "Have you any prejudice or bias resting on your mind either for or against the prisoner at the bar?" "Is your mind perfectly impartial between the State and the accused?" Michie's Georgia Penal Code, 1926, § 1001. Immediately after this had occurred, counsel for the appellants made known to the court that he desired to interrogate the jurors, either directly or through the court, and, after the first juror called had come to the witness chair, submitted to the court seventeen written questions which he desired to be put to each of the jurors, and he stated to the court that on Wednesday, Thursday, Friday, and Saturday of the preceding week, and again that morning before court, he made demand upon the clerk of the court for a list of the jurors, which the clerk refused to give him. The clerk corroborated that statement. Thereupon the court stated that there is a standing order of the court that, when the jurors are drawn, their names shall not be published or communicated to any one, either to the government or any one else, prior to the convening of court, and that the clerk was complying with the standing order of the court, which had been in force for some years, when he declined to let counsel see the jury list; and the court disposed of the suggestion or request by stating: "The other questions you propose are not covered by law." The questions submitted included the following: "Have you at any time had any business dealings or transactions of any kind with the District Attorney, or any of his assistants?" "Are you a member now of any Prohibition Enforcement Society or league or organization?" "Did you read the newspaper accounts of the former trial in December, 1928? Have you any fixed opinion by reason of such reading?" "Did you read any newspaper account of the recent trial of Wilson Jenkins and Mrs. Mary M. Thompson, and in which these two defendants now on trial were mentioned?" Allegations of pleas of former jeopardy which had been filed in this case by the appellants showed that in December, 1928, at a former term of the court, the appellants had been convicted under an indictment returned in November, 1928, which charged them and others with a conspiracy similar to that charged in the indictment in this case.

A result of compliance with the standing order of the court forbidding disclosure to any one of the list of persons drawn for jury service was that, before the trial was entered upon, the appellants and their counsel had no means of knowing what names were on the list, and no opportunity to acquire information necessary to enable them to exercise intelligently the right of challenge. So far as appears, the only information as to the persons whose names were on that list possessed by appellants and their counsel before the right of challenging was to be exercised was that derived from looking at the prospective jurors and hearing their names read from the list and their answers to the three questions propounded by the court. The manner of disposing of the proposed additional questions submitted indicated that the court was or may have been of opinion that the propounding to prospective jurors of any additional questions was not permissible. It was within the discretion of the court to ask other questions to test the competency, fairness, or impartiality of prospective jurors. Aldridge v. United States, 283 U. S. 308, 51 S. Ct. 470, 75 L. Ed. 1054, 73 A. L. R. 1203; Alford v. State, 137 Ga. 458, 73 S. E. 375. In the circumstances attending the making of the suggestion that prospective jurors be asked additional questions, that discretion properly could have been exercised by asking questions as to matters reasonably liable to unduly influence them in passing on the question of the guilt or innocence of the accused. It would be promotive of the fairness of the trial for the accused and their counsel to have further opportunity than, in the circumstances disclosed, was afforded by the answers to the statutory questions, to discover the state of mind of prospective jurors in regard to the issues to be tried, whether they were indifferent between the parties, or were biased or prejudiced as a result of their relations to adversaries of the accused in the trial, or of their membership in an organization engaged in promoting the enforcement of criminal laws charged to have been violated by the accused, or of their having opinions as to the guilt or innocence of the accused based upon reading newspaper accounts of previous trials of the accused or their alleged associates on

similar charges. The answers of prospective jurors as to such matters, which might have the effect of unduly influencing them, and their manner and demeanor while under examination, would do no more than furnish such evidence of their associations or connections and of their state of mind with reference to the issues to be passed on as the accused and their counsel, in the circumstances disclosed, reasonably might ask to have the benefit of to be enabled to exercise intelligently the right of challenge, either for cause or peremptory. Though the answers of prospective jurors to the statutory questions indicated the absence of any ground of challenge for cause, and though no fact was suggested from which it could be inferred or supposed that their answers to additional questions as to matters mentioned would disclose a legal basis for a challenge for cause, answers to such additional questions, and the appearance or demeanor of prospective jurors while under examination, might be expected to furnish some information or make impressions which reasonably might influence the accused or their counsel in exercising the right of peremptory challenge. That right is one of the most important of the rights secured to the accused. It should not be required to be exercised before an opportunity is given for such inspection and examination of prospective jurors as is reasonably necessary to enable the accused to have some information upon which to base an exercise of that right. Lewis v. United States, 146 U. S. 370, 378, 13 S. Ct. 136, 36 L. Ed. 1011; Pointer v. United States, 151 U. S. 396, 408, 14 S. Ct. 410, 38 L. Ed. 208; Armborst v. Cincinnati Traction Co. (C. C. A.) 25 F.(2d) 240; Beatty v. United States (C. C. A.) 27 F.(2d) 323. We are of opinion that, in the circumstances attending the making of the request that prospective jurors be asked additional questions, the court's summary disposition of that request amounted to a failure of the court to exercise its discretion in the matter of examining jurors on the voir dire as to the existence of a disqualifying state of mind [Aldridge v. United States, supra; Neal v. United States (C. C. A.) 22 F.(2d) 52], and had the effect of depriving the accused of a fair opportunity to exercise intelligently their right of peremptory challenge.

It is not to be understood that the court was required to ask any of the additional questions suggested in the form in which they were submitted, or to treat the request made in that regard as having further effect than to invoke the exercise by the court of its power to do what was reasonably practicable to enable the accused to have the benefit of the right of peremptory challenge or to prevent unfairness in the trial.

The judgment is reversed.