609 A.2d 1

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ALEJANDRO MELENDEZ, DEFENDANT-
APPELLANT.

Argued November 4, 1991—Decided July 15, 1992.

*Joseph S. Murphy,* Designated Counsel, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*Debra L. Stone,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 126 *N.J.* 328, 598 *A.*2d 887 (1991), to review the Appellate Division's affirmance, in an unreported opinion, of the conviction of defendant, Alejandro Melendez, for distribution of cocaine, a violation of *N.J.S.A.* 2C:35–5a(1), and for distribution within 1,000 feet of school property, proscribed by *N.J.S.A.* 2C:35–5a(1) and 2C:35–7. Defendant was tried with a co-defendant, Juan Fortuna, who, however, failed to return to court the day after the State had rested its case. The trial court denied Melendez's motion for a mistrial or for severance, and thereafter charged the jury on the purposes for which it could consider Fortuna's flight.

Melendez's appeal questions the propriety of the trial court's treatment of Fortuna's absence. We conclude that the court properly instructed the jury regarding Fortuna's flight, that an absent co-defendant's flight is neither a statement for purposes of New Jersey's Evidence Rules nor an incriminating statement under the Confrontation Clause, and that the trial court's limiting instructions cured any impairment of Melendez's rights.

I

The State built the case against Melendez and Fortuna around the testimony of Investigator Eladio Cruz, an undercover officer with the Narcotics Task Force in the Hudson County Prosecutor's Office, and of Lt. Volz, a detective in the Hoboken police department. That testimony established that on September 29, 1987, Cruz was instructed to go to 309 Monroe Street in Hoboken to attempt to purchase narcotics while Volz and other police officers waited in backup vehicles in the area. Cruz drove alone in an unmarked car to the specified location, then left his vehicle and walked over to speak to a man, later identified as defendant. In Spanish, Cruz asked defendant, "What's up?" When defendant responded, "What do you need? What do you need?," Cruz replied, "A half," meaning

half a gram of cocaine. Melendez told Cruz to drive around the block, and when Cruz returned to 309 Monroe Street, another man, later identified as Fortuna, came up to the car and gave Cruz a small silver tinfoil packet containing cocaine, whereupon Cruz gave Fortuna $50.

Cruz then drove out of the area and radioed Volz to report the transaction. Volz instructed the back-up team to stop the participants in the drug deal and to ascertain their identities. The officers who stopped defendant and Fortuna released Melendez after obtaining identification. They took Fortuna to the station to verify his identity, after which he too was released.

Cruz then drove to the Hoboken Police Department where Lt. Volz showed him a photograph of Fortuna. Cruz identified Fortuna as one of the men who had sold him the drugs. To protect Cruz's undercover status and his ongoing investigations, the authorities did not arrest either Melendez or Fortuna until several months after the foregoing events.

On the completion of Cruz's and Volz's testimony, the State rested its case. When the court convened the following morning, Fortuna did not appear. (His fugitive status continues to this day.) Melendez thereupon moved for a mistrial or, if that were denied, a severance. Specifically, Melendez's lawyer suggested that the court allow him to proceed with his summation and have the jury deliberate separately regarding Melendez before hearing Fortuna's summation. In denying both motions, the trial court reminded counsel of his preliminary instructions to the jurors before the trial had commenced: "Although [defendants] are being tried together, at the same time, they are two separate individuals and you will be hearing cases relative to each of these individuals separately. They are, as I said, each entitled to your individual consideration as though they were being tried alone." Those remarks, said the court, combined with separate verdict sheets, limiting instructions, and further instructions to deliberate independently regarding each

defendant would prevent prejudice to Melendez from a "flight" instruction applicable to Fortuna alone.

Neither defendant presented any evidence. In their summations, the defense attorneys both sought to explain Fortuna's absence as resulting from his fear of an impersonal criminal justice system that could result in an innocent man being sent to prison—"Dominican justice" (Fortuna had come to this country from the Dominican Republic), as Melendez's brief in this Court refers to it. Melendez's attorney argued in addition that the police had fabricated the incident in order to procure arrests. He claimed that the high premium that our criminal-justice system places on arrests and convictions for narcotics-law violations provided a motive for Cruz and Volz to lie.

The court instructed the jury regarding both flight and accomplice liability. It twice charged the jury in unequivocal, clear, and concise language that although it could consider Fortuna's flight as evidence of his guilty conscience, it could not infer Melendez's guilt from Fortuna's flight. Because of its significance in this case, the "flight" charge is set forth in full.

> I have alluded to the fact that he [Fortuna] is not here. Obviously, he is not present at this stage of the proceeding. I'm going to charge you and I do charge you as to flight, because if you find that the defendant Mr. Fortuna, excuse me, hearing [sic] the charges against him would result in his being found guilty at this trial, you may consider that flight, that voluntary absence, in connection with all of the evidence of the case as an indication of the proof of or consciousness of the guilt of Mr. Fortuna individually, and only as to Mr. Fortuna.
>
> Not as to Mr. Melendez.
>
> You may not consider the fact that Mr. Fortuna is not here as against Mr. Melendez in any way, shape, or form. That has nothing to do with Mr. Melendez's case in the rendering of your verdict. They are tried separately; they are deliberated separately, except as to the accomplice charge which I will give you when I get into the particular charges, and you will render a verdict, as I said, separately.
>
> Additionally, as to Mr. Fortuna, you must follow this instruction that I am giving you. The fact that Mr. Fortuna is not here is one of the circumstances that you may consider in the totality of the circumstances of the case and the fact—and the facts as you find them, with complete understanding, that the defendant, Mr. Fortuna, whether he is here or not is presumed innocent unless

proven guilty beyond a reasonable doubt and that he did not have to testify even if he were here. And you may not consider the fact that he wasn't here to testify because he wouldn't have to testify if he was here or not. But you may consider the fact that he's not present relative to this consciousness of guilt—as to Mr. Fortuna only.

You must also follow the instructions that the State always has the burden of proof to prove the defendant guilty beyond a reasonable doubt, both defendants.

Therefore, in your discussions you may consider all the other evidence in this case, also with the fact that Mr. Fortuna is not here, and his voluntary absence, his flight in connection with this case, as an indication of consciousness of guilt on behalf, on his behalf.

You may not consider it as to Mr. Melendez's case in any way, shape, or form, nor may you consider the fact that Mr. Fortuna wasn't here to testify because he didn't have to testify even if he were here.

You can't comment on that. You can't discuss that, because he may have exercised his constitutional right not to testify and you may not draw any inference from that in any way, shape, or form, as I have instructed you previously. And you may not discuss it in your deliberations.

As to the fact that Mr. Melendez did not testify, as I have told you, you may not draw any inference whatsoever. A defendant, whether present or not, is presumed innocent unless proven guilty beyond a reasonable doubt, which is the burden the State must meet, and the defense has no such burden. I'm certain that is now clear to you as to what you may or may not consider.

The court also discussed each of the charges and the evidence separately in respect of each defendant and provided two separate verdict sheets.

In affirming Melendez's conviction the Appellate Division declared that *State v. Andrial*, 203 *N.J.Super.* 1, 495 *A.*2d 878 (App.Div.1985), and a number of federal circuit court decisions supported the trial court's decision to provide an instruction on Fortuna's flight. (In *Andrial*, the Appellate Division upheld a "flight" instruction in single-defendant trial in which identity was a central issue. *Id.* at 4, 7, 495 *A.*2d 878.) The Appellate Division distinguished *State v. Lynch*, 177 *N.J.Super.* 107, 425 *A.*2d 696 (App.Div.), *certif. denied*, 87 *N.J.* 347, 434 *A.*2d 92 (1981), in which it had rejected Lynch's challenge to the trial court's having given the standard "election not to testify" charge, Lynch having absented himself from the courtroom after the first day of a nine-day trial. Finding *Lynch* inapplicable, the court held that the trial court had not abused its

discretion in denying Melendez's motion for a mistrial or for severance. In reaching that conclusion the Appellate Division rejected Melendez's assertion that because Fortuna's failure to attend the balance of the trial was a statement by assertive conduct under Evidence Rules 62(1) and (6), a charge on Fortuna's flight had violated his right to confront the witnesses against him and had contravened the rule against hearsay. See *Bruton v. United States*, 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476 (1968). The court noted that even as applied to Fortuna, the "flight" instruction had provided for a "limited permissible inference" rather than a "statement of guilty," and that the jury charge sufficiently protected Melendez's fair-trial rights.

## II

Melendez makes two related claims of error. First, he asserts that in charging the jury on Fortuna's flight, the trial court erroneously extended the holding of *Andrial, supra,* 203 *N.J.Super.* 1, 495 *A.*2d 878, to joint trials, and that *Lynch, supra,* 177 *N.J.Super.* 107, 425 *A.*2d 696, governs such cases. As support for that contention, Melendez emphasizes his and Fortuna's unified defense strategies, arguing that the refusal to grant a severance combined with the instruction regarding Fortuna's flight undermined his defense and prejudicially and unfairly surprised him.

Second, defendant contends that because Fortuna's flight amounted to a "statement" in the form of assertive conduct under *Evidence Rule* 62(1), the flight was inadmissible as hearsay and therefore the court should not have delivered a "flight" charge. Relying on *Bruton, supra,* 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476, Melendez adds that as a matter of constitutional law, limiting instructions could not cure the prejudice visited on him by the trial court's denial of a motion for severance and by the loss of the opportunity to cross-examine the declarant.

-A-

■ In instructing the jury regarding Fortuna's flight, the trial court relied on *Rule* 3:16, which provides that "the defendant's voluntary absence after the trial has commenced in his presence shall not prevent its continuing to * * * the verdict." *Rule* 3:15–2(b), which allows a court to "grant a severance of defendants, or direct other appropriate relief" if "it appears that a defendant * * * is prejudiced by a permissible or mandatory joinder * * * of defendants," governed the trial court's ruling on severance.

In *Andrial, supra,* the Appellate Division held that the trial court had properly administered flight instructions based on the defendant's failure to appear on the fourth day of a jury trial, after the State had presented most of its case. 203 *N.J.Super.* at 4, 495 *A.*2d 878. The Appellate Division determined that "the jury had a right to infer from all the circumstances present and unexplained, in conjunction with defendant's leaving on the fourth day of the trial, that it was done with a consciousness of guilt and pursuant to an effort to avoid prosecution based on that guilt." *Andrial, supra,* 203 *N.J.Super.* at 7, 495 *A.*2d 878 (citing *State v. Sullivan,* 43 *N.J.* 209, 238–39, 203 *A.*2d 177 (1964), *cert. denied,* 382 *U.S.* 990, 86 *S.Ct.* 564, 15 *L.Ed.*2d 477 (1966)). Acknowledging the trial court's emphasis on Andrial's motive to flee, see *State v. Andrial,* 150 *N.J.Super.* 198, 201, 375 *A.*2d 292 (Law Div.1977), the Appellate Division observed that Andrial had left his residence at 4:00 a.m., with his belongings, during the night after the victim of the crime had identified him in open court. *Ibid.*

*Lynch, supra,* involved a challenge to a trial court's decision to continue the joint armed-robbery trial of Lynch and a co-defendant after Lynch failed to appear on the second day of trial. 177 *N.J.Super.* at 110–11, 425 *A.*2d 696 (citing *R.* 3:16). On appeal, Lynch challenged the decision to continue the trial in his absence by asserting that the trial had not "commenced" for purposes of the *Rule.* Rejecting Lynch's contentions that a

trial does not "commence" until jeopardy attaches and that the State bears the burden of proving that the defendant is absent voluntarily, the Appellate Division held that the trial had "commenced" after the trial court had seated fourteen jurors and had administered preliminary instructions. *Id.* at 112, 113, 425 *A.*2d 696. Because the trial court in *Lynch* had instructed the jury that it should draw no unfavorable inference from Lynch's absence—an instruction of which Lynch did not, of course, complain and therefore on which the Appellate Division had no occasion to rule—Melendez argues that the trial court in his case likewise should have omitted any charge favorable to the State concerning Fortuna's flight. *Lynch* provides no support for Melendez's position. That case's entire focus is on the propriety of continuing a trial in a defendant's absence, an issue that this Court recently confronted in *State v. Hudson,* 119 *N.J.* 165, 574 *A.*2d 434 (1990). It simply does not deal with a "flight" issue.

■ In upholding the trial court's denial of Melendez's severance motion the Appellate Division relied on *State v. Scioscia,* 200 *N.J.Super.* 28, 490 *A.*2d 327 (App.Div.), *certif. denied,* 101 *N.J.* 277, 501 *A.*2d 942 (1985). In *Scioscia* the court held that the trial court's instructions to deliberate separately regarding each of the defendants cured any impairment of the co-defendants' rights that might have resulted from the trial court's denial of a motion for severance after one defendant had pled guilty during the trial. *Id.* In so holding, the court correctly observed that the law affords trial courts broad discretion in assessing such motions. *Id.* at 42, 490 *A.*2d 327 (citing *State v. Rosenberg,* 37 *N.J.Super.* 197, 202, 117 *A.*2d 168 (App.Div. 1955), *certif. denied,* 20 *N.J.* 303, 119 *A.*2d 789 (1956)).

In *State v. Hudson, supra,* Justice Stein recognized "the difficulty of rescheduling, * * * particularly multiple-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy." 119 *N.J.* at 180, 574 *A.*2d

434 (citing *United States v. Tortora*, 464 *F.*2d 1202, 1202 (2d Cir.), *cert. denied, Santoro v. United States*, 409 *U.S.* 1063, 93 *S.Ct.* 554, 34 *L.Ed.*2d 516 (1972)). Cases in the federal system have also reacted sympathetically to that consideration. *E.g., United States v. Sanchez*, 790 *F.*2d 245, 250–51 (2d Cir.), (listing factors relevant to decision on whether to proceed without defendant, to grant continuance, or to sever), *cert. denied*, 479 *U.S.* 989, 107 *S.Ct.* 584, 93 *L.Ed.*2d 587 (1986). Nothing in this case would have warranted a court ordering severance before trial or impanelling separate juries for a simultaneous trial of both defendants. See, *e.g., State v. Corsi*, 86 *N.J.* 172, 178, 430 *A.*2d 210 (1981); *State v. Hernandez,* 163 *N.J.Super.* 283, 394 *A.*2d 883 (App.Div.), *certif. denied*, 81 *N.J.* 342, 407 *A.*2d 1216 (1979). Under the circumstances the trial court's rejection of Melendez's attorney's novel suggestion regarding trial procedure was amply justified under our *Rules*.

–B–

■ Melendez claims that the Supreme Court's decision in *Bruton, supra*, requires reversal of his conviction because the Court there held that limiting instructions are, as a matter of constitutional law, insufficient to overcome the prejudice to a remaining defendant in a joint trial in which an unavailable codefendant inculpates the remaining defendant—there through an oral confession. 391 *U.S.* at 124, 88 *S.Ct.* at 1621, 20 *L.Ed.*2d at 478. He adds that the determination of whether Fortuna's flight constitutes a statement for purposes of the general rule against "hearsay" should be irrelevant to our assessment of whether the trial court's charge on Fortuna's flight violated the Confrontation Clause, *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. In so arguing, Melendez emphasizes the constitutional stature of a defendant's right to confront the witnesses against him. *See generally California v.*

*Green,* 399 *U.S.* 149, 155–59, 90 *S.Ct.* 1930, 1933–35, 26 *L.Ed.*2d 489, 495–97 (1970) (indicating that Confrontation Clause and prohibition against hearsay, although protecting same values and arising from same concerns, do not necessarily overlap). However, we disagree with the contention that flight of a co-defendant constitutes "testimony" for purposes of, or implicates, the Confrontation Clause.

In *Bruton, supra,* the Supreme Court reviewed a conviction after a joint trial for armed robbery. 391 *U.S.* at 124, 88 *S.Ct.* at 1621, 20 *L.Ed.*2d at 478. During Bruton's trial, a postal inspector had testified that Bruton's co-defendant, Evans, had given an oral confession expressly inculpating Bruton. *Ibid.* Relying on *Delli Paoli v. United States,* 352 *U.S.* 232, 77 *S.Ct.* 294, 1 *L.Ed.*2d 278 (1957), the trial court had instructed the jury that although it could consider the evidence as inculpating Evans, it could not consider the inspector's testimony as affecting Bruton because Evans' confession was inadmissible hearsay. 391 *U.S.* at 124–25, 88 *S.Ct.* at 1621–22, 20 *L.Ed.*2d at 478. The Supreme Court expressly overruled *Delli Paoli* and held that "because of the substantial risk that the jury, despite the [limiting] instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt, admission of Evans' confession in this joint trial violated [Bruton's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126, 88 *S.Ct.* at 1622, 20 *L.Ed.*2d at 479.

The unexplained flight of a co-defendant does not pose the concerns underpinning the Court's holding in *Bruton.* In *Richardson v. Marsh,* 481 *U.S.* 200, 107 *S.Ct.* 1702, 95 *L.Ed.*2d 176 (1987), the Court noted an "important distinction" between a co-defendant's confession that expressly implicates the remaining defendant and one that incriminates that defendant only when linked with other evidence presented by the prosecution. 481 *U.S.* at 208, 107 *S.Ct.* at 1707, 95 *L.Ed.*2d at 186 (citing *Bruton, supra,* 391 *U.S.* at 124 n. 1, 88 *S.Ct.* at 1620 n. 1, 20 *L.Ed.*2d at 476 n. 1). The circumstantial evidence of Melendez's guilt provided by Fortuna's flight is simply not that type of "powerfully incriminating" confession. *Compare Richardson, supra,*

481 *U.S.* at 208, 107 *S.Ct.* at 1707, 95 *L.Ed.*2d at 186 (upholding admission of co-defendant's redacted confession as not violative of Sixth Amendment) *with Bruton, supra,* 391 *U.S.* at 124 n. 1, 88 *S.Ct.* at 1620 n. 1, 20 *L.Ed.*2d at 476 n. 1 (rejecting admission of co-defendant's confession expressly implicating remaining defendant because violative of Sixth Amendment).

Moreover, because the trial court did not treat Fortuna's flight as bearing on Melendez's guilt, Fortuna cannot properly be characterized as a "witness against" Melendez for purposes of the Confrontation Clause, *see United States v. Sophie,* 900 *F.*2d 1064, 1077 (7th Cir.) (rejecting Confrontation Clause challenge to admission of tape recording that did not mention defendant directly when jury would not likely infer that that statement referred to defendant), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 124, 112 *L.Ed.*2d 92 (1990); *United States v. Kindig,* 854 *F.*2d 703, 709 (5th Cir.1988) (holding that Confrontation Clause is not implicated when witness' testimony not adverse to defendant); *United States v. Doddington,* 822 *F.*2d 818, 821 (8th Cir.1987) (holding that court's refusal to grant immunity to witness to preclude self-incrimination did not violate defendant's right to compulsory process because witness testified for defendant, not prosecution); *Miller v. Stagner,* 757 *F.*2d 988, 996 (9th Cir.1985) (holding that exclusion of defendants from in-chambers hearing to substitute jurors did not violate right to confront witnesses against defendants because "jurors are not witnesses against [a] defendant"), *cert. denied,* 475 *U.S.* 1049, 106 *S.Ct.* 1271, 89 *L.Ed.*2d 579 (1986); *United States v. Crockett,* 813 *F.*2d 1310, 1313 (4th Cir.) (noting that Confrontation Clause confers right to confront only hostile witnesses and that "the right to confrontation [does not] arise merely from the status of the witness as a co-defendant"), *cert. denied,* 484 *U.S.* 834, 108 *S.Ct.* 112, 98 *L.Ed.*2d 71 (1987). As the Fourth Circuit observed in *Crockett, supra,* "a number of circuits have held that no violation of the confrontation clause occurs where a codefendant's statement could fairly be understood not to incriminate the accused." 813 *F.*2d at 1314 (citing *United States*

v. *Porter,* 764 *F.*2d 1, 16 (1st Cir.1985), *aff'd,* 807 F.2d 21 (1st Cir.1986), *cert. denied,* 481 *U.S.* 1048, 107 *S.Ct.* 2178, 95 *L.Ed.*2d 835 (1987); *United States v. Webster,* 734 *F.*2d 1048, 1054 n. 6 (5th Cir.), *cert. denied,* 469 *U.S.* 1073, 105 *S.Ct.* 565, 83 *L.Ed.*2d 506 (1984); *United States v. Lane,* 752 *F.*2d 1210, 1216 (7th Cir.1985); *United States v. Jenkins,* 785 *F.*2d 1387, 1393 (9th Cir.1986)). As Melendez's attorney recognized in his summation, the jury could have considered Fortuna's flight as indicating Fortuna's fear of the system rather than his consciousness of either his or Melendez's guilt. Even ignoring the strong limiting instructions in this case, Fortuna never testified and is not properly considered a hostile witness. *See also United States v. Bales,* 813 *F.*2d 1289, 1296 (4th Cir.1987) (holding that denial of defendant's attempt to confront favorable witnesses does not implicate Confrontation Clause).

■ We hold that the trial court did not abuse its discretion in denying the motion for severance and delivering instructions on Fortuna's flight. The court's handling of Fortuna's flight did not prevent a fair trial. The limiting instructions, which are not constitutionally inadequate under *Bruton,* cured any impairment of Melendez's rights. *Compare Cruz v. New York,* 481 *U.S.* 186, 193, 107 *S.Ct.* 1714, 1719, 95 *L.Ed.*2d 162, 172 (1987) (holding non-testifying co-defendant's confession violative of *Bruton*) *with Richardson, supra,* 481 *U.S.* at 208, 107 *S.Ct.* at 1707, 95 *L.Ed.*2d at 186 (holding non-testifying co-defendant's confession, redacted to omit references to defendant, admissible notwithstanding *Bruton*).

### III

#### –A–

■ We turn to Melendez's argument that the trial court's "flight" charge violated the rule against hearsay. New Jersey's Rules of Evidence include within the definition of a statement any "nonverbal conduct of a person intended by him

as the substitute for words in expressing the matter stated."
*Evid.R.* 62(1). As one commentator has noted, "nothing is
hearsay which is not a statement." Biunno, *Current N.J.
Rules of Evidence,* comment 1 on *Evid.R.* 62(1) (1992)). As we
have observed above, in limiting the jury's consideration of
Fortuna's flight to that defendant alone, the trial court correct-
ly determined that the jury could reasonably conclude that
Fortuna had failed to appear because of his "consciousness of
guilt and pursuant to an effort to avoid prosecution based on
that guilt." *Andrial, supra,* 203 *N.J.Super.* at 7, 495 *A.*2d 878
(citing *Sullivan, supra,* 43 *N.J.* at 238–39, 203 *A.*2d 177).
However, in order to accept Melendez's contention that the
flight constituted a "statement" for purposes of the prohibition
against hearsay, we must conclude that Fortuna intended that
his absence from trial inculpate Melendez.

Melendez makes no effort to clarify whether he contends that
Fortuna intended that his flight indicate that neither co-defen-
dant was guilty or whether he contends that Fortuna intended
to indicate that Fortuna was innocent but that Melendez was
guilty. However, his brief speculates about the reasons for
Fortuna's departure, suggesting first that Fortuna "may have
left because he felt that he was guilty alone or [that] both were
guilty," and then that Fortuna might have fled "thinking he
was about to receive justice as served in the Dominican Repub-
lic." Thus, in arguing that the evidence did not support the
flight instruction even regarding Fortuna, Melendez implies
that Fortuna chose not to return to the trial because Fortuna
lacked confidence in New Jersey's criminal-justice system. On
the other hand, in emphasizing, for purposes of his hearsay-
based argument, the common defense proffered by the defen-
dants and the conspiratorial nature of the distribution operation
at issue, he argues, as he must, that Fortuna's flight necessar-
ily indicated—and was intended to indicate—not only that For-
tuna believed himself to be guilty and that he would eventually
be punished if *he* stuck around, but also that he believed
Melendez to be guilty.

On the record before us we cannot ascribe such profound meaning to Fortuna's flight. Fortuna's failure to appear demonstrated no more than his awareness of his guilt and his effort to avoid prosecution. Although Fortuna's flight may have been circumstantial evidence of the infirmity in Melendez's contention that Cruz and the police had lied about the crime, and might be construed as revealing Fortuna's doubts about Melendez's innocence, absolutely nothing suggests Fortuna's *intention* so to indicate. We therefore conclude that Fortuna's flight does not constitute a "statement" within the meaning of *Evidence Rule* 62(1) and is not subject to the prohibition against hearsay. *Cf. Wyatt by Caldwell v. Wyatt,* 217 *N.J.Super.* 580, 585, 526 *A.*2d 719 (App.Div.1987) (holding that evidence of automobile service company's settlement with plaintiff prior to trial was not an "oral or written expression" under *Evidence Rule* 62(2) and therefore not hearsay).

### –B–

Finally, we reject Melendez's conclusory contention—also grounded in our *Evidence Rules*—that the trial court should have excluded "evidence of Fortuna's flight" under *Evidence Rule* 4. That Rule is residual in that one should "probably not * * * refer to Rule 4 when other exclusionary principles are being considered." Biunno, *supra,* comment 1 on *Evid.R.* 4 (citing *Overlook Terrace Corp. v. Excel Properties Corp.,* 210 *N.J.Super.* 420, 426, 510 *A.*2d 68 (App.Div.1986)). In this case, which entails assessment of the propriety of flight instructions rather than the propriety of admission of testimonial or demonstrative evidence, even were a court to undertake an *Evidence Rule* 4 analysis it surely would not mistakenly exercise its discretion in admitting the "flight" evidence.

Judgment affirmed.

STEIN, J., dissenting.

Because exactly the same evidence supported defendant's and Fortuna's convictions, Fortuna's mid-trial flight combined

with the trial court's flight instruction seriously prejudiced Melendez—so much so that even the most conscientious jury could not have confined its consideration of the flight charge solely to the determination of Fortuna's case. Accordingly, limiting instructions were inadequate to safeguard Melendez's Sixth Amendment right to confront witnesses against him. In my view, the trial court either should have granted the motion for severance or refused to give the flight charge.

Ordinarily, a witness is considered to be testifying "against" a defendant for Confrontation Clause purposes if the jury may consider the evidence provided by the witness in assessing the defendant's guilt. *Cruz v. New York*, 481 *U.S.* 186, 190, 107 *S.Ct.* 1714, 1717, 95 *L.Ed.*2d 162, 169 (1987). When evidence is admissible against only one defendant, a limiting instruction to that effect generally will ensure that the jury will not consider that evidence in assessing the guilt or innocence of a codefendant. *Richardson v. Marsh*, 481 *U.S.* 200, 206–07, 107 *S.Ct.* 1702, 1706–07, 95 *L.Ed.*2d 176, 185–86 (1987); *Cruz, supra,* 481 *U.S.* at 190, 107 *S.Ct.* at 1717, 95 *L.Ed.*2d at 169–70; *Bruton v. United States*, 391 *U.S.* 123, 135–36, 88 *S.Ct.* 1620, 1627, 20 *L.Ed.*2d 476, 484–85 (1968). As the United States Supreme Court has acknowledged, however, "there are some contexts in which the risk that the jury will not, or cannot, follow [limiting] instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton, supra,* 391 *U.S.* at 135, 88 *S.Ct.* at 1627, 20 *L.Ed.*2d at 485. In such cases, a limiting instruction is not sufficient to ensure that the jury will not use evidence improperly against a codefendant. *See, e.g., Cruz, supra,* 481 *U.S.* at 190, 107 *S.Ct.* at 1717, 95 *L.Ed.*2d at 170. If the defendant providing the damaging evidence is unavailable for cross-examination, introduction of that evidence unfairly infringes on the codefendant's right of confrontation. *Id.* at 193, 107 *S.Ct.* at 1719, 95 *L.Ed.*2d at 172.

In *Bruton,* the Supreme Court held that the trial court had erred in admitting a non-testifying codefendant's confession

that expressly implicated Bruton, even though the court had instructed the jury that the evidence could be used only against the codefendant. According to the Court, the exceptionally-incriminating nature of the evidence was such that the jury could not help but disregard the limiting instruction. *Bruton, supra,* 391 *U.S.* at 136–37, 88 *S.Ct.* at 1628–29, 20 *L.Ed.*2d at 485–86. Because Bruton had had no opportunity to cross-examine his codefendant, the Court held that the admission of the confession posed a substantial threat to the defendant's right to confront the witnesses against him, and constituted reversible error. *Id.* at 135–37, 88 *S.Ct.* at 1628, 20 *L.Ed.*2d at 485–86.

As the majority notes, the Supreme Court subsequently has clarified *Bruton's* scope. In *Richardson, supra,* the Court held that a codefendant's confession had been properly admitted because the confession did not refer to the defendant, nor did it indicate that anyone other than the codefendant and another accomplice had participated in the crime. 481 *U.S.* at 203, 107 *S.Ct.* at 1705, 95 *L.Ed.*2d at 183. In *Richardson,* the defendant was accused with two others of robbery and murder. Her codefendant, a fugitive at the time of trial, had previously confessed, and the confession was admitted at trial. Defendant testified that she had been present during the crime, but asserted that she had been an unwilling participant, had not known her codefendants were armed, and had not intended to rob or kill anyone. The *Richardson* jury could have found the codefendant's confession entirely credible, yet independently could have determined that defendant had not formed the requisite intent necessary to be found guilty of the charges. Because the codefendant's confession did not refer to defendant in any respect, the jury might have been more likely to believe that she had been an unwilling participant. The confession, therefore, was not sufficiently incriminating to render unlikely jury compliance with the limiting instruction. Thus, in *Richardson,* unlike *Bruton,* no substantial risk arose that the jury would use the codefendant's unexamined confession to deter-

mine the defendant's guilt, and therefore the defendant's Sixth Amendment rights were not implicated. 481 *U.S.* at 208, 211, 107 *S.Ct.* at 1707, 1709, 95 *L.Ed.*2d at 186, 188.

The majority concludes, *ante* at 59, 609 *A.*2d at 6, that Fortuna's flight combined with the flight instruction cannot be characterized as evidence "against" Melendez for Confrontation Clause purposes because the trial court gave a limiting instruction. That analysis, however, begs the question. A jury uses incriminating evidence "against" a defendant when it disregards limiting instructions. Accordingly, the relevant inquiry is not whether the trial court explained the limited relevance of the evidence but whether the incriminating nature of that evidence is such that the jury was unlikely to have followed the limiting instruction. *See Richardson, supra,* 481 *U.S.* at 208 n. 3, 107 *S.Ct.* at 1707 n. 3, 95 *L.Ed.*2d at 186 n. 3. The majority's holding also relies on *Richardson's* broad directive that when evidence, not incriminating on its face, becomes incriminating only when linked to other evidence, "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." 481 *U.S.* at 208, 107 *S.Ct.* at 1707, 95 *L.Ed.*2d at 186. Viewed in the abstract, evidence of a codefendant's flight does seem less incriminating than a confession that expressly implicates a defendant. In determining whether evidence infringes on a defendant's right to confront witnesses, however, the inquiry should focus not on whether the evidence is "facially" incriminatory but rather on whether the trial court reasonably could have assumed that a jury could obey the limiting instructions in the context of the evidence presented at trial. See *State v. Scioscia,* 200 *N.J.Super.* 28, 43, 490 *A.*2d 327 (App.Div.), *certif. denied,* 101 *N.J.* 277, 501 *A.*2d 942 (1985); *cf. State v. Manney,* 26 *N.J.* 362, 368, 140 *A.*2d 74 (1958) (noting that question whether to sever trial involving multiple charges depends on "whether a jury is likely to be unable to comply with the trial court's instructions").

Application of that standard to these facts demonstrates that Melendez was substantially prejudiced by the instruction con-

cerning Fortuna's mid-trial flight. The State's evidence consisted of the testimony of Officer Cruz, who allegedly had purchased the drugs from both defendants acting in concert, and Cruz's supervising officer, who had not witnessed the transaction. Although Cruz testified that he had identified defendant and Fortuna soon after the transaction, Melendez was not arrested until several months later. Additionally, the supervising officer admitted that he had not recovered the fifty dollars that Cruz had used to purchase the drugs. Although defendant and Fortuna were represented by separate attorneys, both attorneys advanced the same theory at trial—that Officer Cruz had fabricated the drug sale to advance his career.

Thus, the State's theory was that Fortuna and Melendez had acted together in selling cocaine to Officer Cruz. Their common position was that neither of them had been present when Cruz had allegedly purchased drugs. Neither defendant nor Fortuna testified in his own behalf. The entire case, therefore, rested on whether the jury believed Officer Cruz. If the jury determined that Cruz was credible, it would inevitably find both defendant and Fortuna guilty; if it did not believe Cruz, both were likely to be acquitted.

. Because the jury was allowed to consider Fortuna's flight as a basis for determining Fortuna's guilt, the jury was also entitled to infer from Fortuna's flight that Officer Cruz had told the truth. Once the jury had determined that Cruz's testimony was credible, it would virtually be compelled to find Melendez guilty. Even if the jury had attempted diligently to use the evidence of Fortuna's flight against Fortuna alone, it could not avoid considering that evidence as also implicating Melendez. Because Fortuna was not present, Melendez had no opportunity to cross-examine him regarding his reasons for fleeing. Moreover, because Fortuna's flight occurred toward the trial's conclusion, Melendez had no opportunity to offer a defense that was not linked inextricably to Fortuna's defense. Accordingly, Fortuna's flight, combined with the flight instruc-

tion, served as "powerfully incriminating" evidence against Melendez.

Concededly, several courts have found that a flight instruction concerning a codefendant does not substantially prejudice another defendant when the trial court has expressly limited the use of that evidence. Many of those cases are distinguishable, however, because the facts implicating the defendants were not so intertwined that the guilt of one defendant conclusively established the guilt of the other. See *United States v. Candoli*, 870 *F*.2d 496, 502 (9th Cir.1989); *United States v. Lobo*, 516 *F*.2d 883, 885 (2nd Cir.), *cert. denied*, 423 *U.S.* 837, 96 *S.Ct.* 65, 46 *L.Ed.*2d 56 (1975); *Russell v. United States*, 586 *A*.2d 695 (D.C.1991); *Camp v. State*, 164 *Ga.App.* 253, 296 *S.E.*2d 799 (1982). The remaining cases are unpersuasive, offering only cursory discussions of the facts or summary analyses of the flight issue. See *United States v. Hyson*, 721 *F*.2d 856, 864–65 (1st Cir.1983); *United States v. Schwartz*, 535 *F*.2d 160, 165 (2d Cir.1976), *cert. denied*, 430 *U.S.* 906, 97 *S.Ct.* 1175, 51 *L.Ed.*2d 581 (1977); *United States v. DeLeon*, 498 *F*.2d 1327, 1332 (7th Cir.1974); *People v. Barnes*, 2 *Ill.App.*3d 461, 276 *N.E.*2d 509, 512–13 (1971); *State v. Ouimette*, 110 *R.I.* 747, 298 *A*.2d 124, 139–40 (1972).

A substantial risk exists that the jury considered Fortuna's flight in assessing Cruz's credibility, and thus in determining Melendez's guilt. Melendez and Fortuna had presented identical defenses to the charges against them. Moreover, Melendez had no opportunity to explore on cross-examination the reasons for Fortuna's flight. Because Melendez was severely prejudiced by Fortuna's flight and the subsequent flight charge, I would hold that the trial court committed reversible error in issuing the flight instruction or alternatively in denying the motion to sever.

Chief Justice WILENTZ joins in this opinion.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For reversal*—Chief Justice WILENTZ and Justice STEIN—2.