869 A.2d 955 (2005)
376 N.J. Super. 201
STATE of New Jersey, Plaintiff-Respondent,
v.
Spencer Lee HORNE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 2004.
Decided March 31, 2005.
*956 Yvonne Smith Segars, Public Defender, attorney for appellant (Alan I. Smith, *957 Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Attorney General of New Jersey, attorney for respondent (Frank Muroski, Deputy Attorney General, of counsel and on the brief).
Before Judges KESTIN, ALLEY and FALCONE.
The opinion of the court was delivered by ALLEY, J.A.D.
On March 5, 2002, in indictment number XXXX-XX-XXXX, a Hudson County Grand Jury charged defendant, Spencer Lee Horne, and his codefendant, Rickey Weaver, with having committed the following offenses in Jersey City on December 30, 2001: first-degree armed robbery, N.J.S.A. 2C:15-1 (Count One), and fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e) (Count Two).
On August 7 through August 12, 2002, a jury tried defendant and Weaver on these charges. When defendant did not appear for trial, he was tried in absentia. At trial, the alleged victim, Michael Guest, identified Weaver and the toy gun, as well as a photograph of defendant. Officer Goodman also identified defendant's photograph at trial. Guest stated that he had "no doubt" that it was defendant and Weaver who had robbed him. Guest also identified two photographs of the vehicle used in the robbery, as well as his signature on both photographs. Neither defendant nor Weaver presented any witnesses or evidence on their behalf. On August 12, 2002, the jury found defendant and Weaver guilty of first-degree armed robbery and fourth-degree possession of an imitation firearm for an unlawful purpose.
On December 17, 2002, a Hudson County Grand Jury charged defendant in indictment number XXXX-XX-XXXX with having committed the following offenses on or about July 26, 2002: third-degree burglary, N.J.S.A. 2C:18-2(a) (Count One), and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (Count Two). On February 13, 2003, defendant entered a plea of guilty to the charge of third-degree burglary in indictment number XXXX-XX-XXXX, as part of a plea bargain in which the State agreed to recommend dismissal of Count Two of the indictment.
On February 13, 2003, defendant was charged in an accusation with third-degree bail jumping, N.J.S.A. 2C:29-7. That same day, he pled guilty to that charge and, when pleading guilty, he admitted that he had been provided notice in court to appear for his trial that was scheduled to begin on August 5, 2002. Defendant acknowledged that the judge had informed him that if he did not appear, the trial would proceed without him. Defense counsel also stated on the record that defendant had actually been handed the notice informing defendant to appear on the scheduled date, and that the notice was signed by the judge, both attorneys, and defendant.
At sentencing on March 13, 2003, on indictment number XXXX-XX-XXXX, the State moved to have defendant sentenced to an extended term for the armed robbery conviction. Denying the State's motion, the court merged Count Two into Count One, and sentenced defendant to a twenty-year prison term with a seventeen-year period of parole ineligibility, as required by the "No Early Release Act," N.J.S.A. 2C:43-7.2, (NERA), to be served concurrently with the aforementioned sentences. The court also imposed the required five-year period of parole supervision, and all statutorily mandated fines and penalties. On the same day, the court sentenced defendant to concurrent five-year *958 sentences for the third-degree convictions of burglary and bail jumping, each with a two-and-a-half year period of parole ineligibility.
The circumstances of the crimes for which the jury convicted defendant were straightforward. At approximately 1:00 a.m. on December 30, 2001, Michael Guest was walking on Linden Avenue enroute to Vincent's Pizzeria in Jersey City. Prior to arriving at the pizzeria, Guest observed two people in a black car, either a 1985 Grand Marquis or 1985 Crown Victoria, pull up to him with its lights off.
The passenger, later identified as codefendant, Rickey Weaver, left the vehicle with an object in his hand that appeared to Guest to be a small black handgun. Weaver approached Guest and said, "give me everything." The driver of the vehicle, later identified as defendant, also got out and approached Guest. Defendant and Weaver then proceeded to search Guest's clothing by patting his pants pockets, reaching into his jacket pockets, and pulling his pants up to view inside his socks. Unsuccessful in the search, Weaver questioned Guest as to what he was doing on the street without any money. Defendant and Weaver then walked back to their vehicle and drove off.
After this incident, Guest proceeded to his home, which was approximately a block away, to call the police. He provided the police descriptions of both defendant and Weaver, as well as a description of the car, and informed the police that they were armed with a handgun. As the result of a radio dispatch, Officer Anthony Goodman began to follow a black Grand Marquis for several blocks, noting that it had two black male occupants. With the assistance of a marked patrol unit, Officer Goodman stopped the Grand Marquis. As Officer Goodman approached the vehicle, he observed the passenger crouch down. The officers ordered both the driver and the passenger, subsequently identified as defendant and Weaver, to exit the vehicle, and proceeded to search them. Officer Goodman noted that Weaver was wearing a knitted hat, and that defendant appeared much heavier than Weaver. The officer also observed that both suspects were wearing dark clothing. Officer Goodman looked inside the Grand Marquis and saw the handle of what appeared to be a handgun on the floor of the front passenger side. The officer then seized the object and determined that it was a toy gun.
The police brought Guest to police headquarters to determine whether defendant and Weaver were the men who were involved in the earlier encounter. Guest remained in the back seat of a patrol car parked across the street while defendant and Weaver were brought into headquarters. Guest then identified defendant and Weaver as the two men who had robbed him, and the Grand Marquis as the vehicle that was used. He also identified the seized toy gun as the implement displayed by Weaver. Both defendant and Weaver were arrested and charged with first-degree armed robbery and fourth-degree possession of an imitation firearm for an unlawful purpose.
On July 26, 2002, while awaiting trial on bail for the December 2001 armed robbery, defendant broke into a van in North Bergen and removed a toolbox. Neither the van nor the toolbox belonged to defendant, nor did he have permission to enter the van.
Defendant contends in his brief on appeal:

POINT I: THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE *959 STATE'S CASE ON THE CHARGE OF ROBBERY ON COUNT ONE.

POINT II: THE TRIAL COURT ABUSED ITS DISCRETION BY TRYING THE DEFENDANT IN ABSENTIA. (Not Raised Below)

POINT III: THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY THAT IT SHOULD NOT GIVE ANY GREATER WEIGHT TO THE WITNESS' IDENTIFICATION OF THE DEFENDANT AS ONE OF THE ACTORS MERELY BECAUSE THEY IDENTIFIED THE DEFENDANT'S BCI "MUG SHOT" AND THE ADMISSION OF THE DEFENDANT'S "MUG SHOT" INTO EVIDENCE MADE NECESSARY A SPECIFIC JURY INSTRUCTION THAT THE FACT THAT THE POLICE TOOK AN ARREST BCI "MUG SHOT" OF THE DEFENDANT WAS NOT SUBSTANTIVE EVIDENCE THAT THE DEFENDANT COMMITTED THE ROBBERY. (Not Raised Below)

POINT IV: THE TRIAL COURT ABUSED ITS DISCRETION IN CHARGING THE JURY THAT THE DEFENDANT'S ABSENCE FROM THE TRIAL COULD BE CONSIDERED AS EVIDENCE OF CONSCIOUSNESS OF GUILT.

POINT V: IMPOSITION OF THE TWENTY (20) YEAR SENTENCE WITH AN 85% NERA PERIOD OF PAROLE INELIGIBILITY ON DEFENDANT'S ROBBERY CONVICTION WAS EXCESSIVE AND AN ABUSE OF THE SENTENCING COURT'S DISCRETION.
A. THE COURT ABUSED ITS DISCRETION IN IMPOSING A SENTENCE IN EXCESS OF THE PRESUMPTIVE SENTENCE FOR A CRIME OF THE FIRST DEGREE.
B. THE COURT ABUSED ITS DISCRETION IN IMPOSING AN 85% NERA PERIOD OF PAROLE INELIGIBILITY.
Thereafter, by a supplemental letter dated July 27, 2004, defendant asserted that his sentence was contrary to principles set forth in Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L. Ed.2d 403, reh'g denied, ___ U.S. ___, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004).
We first consider defendant's contention that the court erred by failing to grant his motion for a judgment of acquittal pursuant to R. 3:18-1 because his "conduct neither placed the victim in fear, nor corroborated an intent to commit a robbery." With regard to the element of fear, defendant suggests that because "the weapon was never pointed towards the victim," there was insufficient proof as to fear of immediate bodily injury. Finally, he maintains that the court misperceived the statement regarding Guest's lack of money because it was made as the two actors were leaving the scene "and had nothing to do with an alleged robbery."
Motions for judgments of acquittal are governed by R. 3:18-1, which provides:
At the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction.
In determining such a motion, the court must ascertain whether the State's evidence in its entirety would permit a reasonable jury to find guilt of the offense beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967). The reviewing court shall provide *960 "the State the benefit of all its favorable testimony as well as of the favorable inferences which reasonably could be drawn therefrom." Ibid. We review the trial court's ruling on the motion for acquittal by considering the State's evidence, direct or circumstantial, in light of the Reyes standard. State v. Josephs, 174 N.J. 44, 81, 803 A.2d 1074 (2002).
Defendant's contention that the trial court erred by denying his motion for acquittal is meritless. First, defendant's suggestion that there was insufficient evidence demonstrating that the victim was in fear of imminent bodily harm because the gun was only brandished, and not pointed directly at the victim, is nonsensical. Second, the display of an imitation gun, accompanied by a search of Guest, provided strong indicia of an intent to commit robbery. Just minutes after the incident, Guest provided descriptions of both actors, the gun, and the vehicle used in the commission of the offense. Shortly thereafter, the police apprehended two men fitting the descriptions provided by Guest, while driving the same model vehicle observed by him, in which an imitation gun was found in the passenger compartment. At trial, Guest positively identified both defendant and Weaver as the men who had robbed him. In sum, we reject defendant's contention that the court below erred by not granting a judgment of acquittal because, on the proofs adduced at trial, there was ample evidence upon which a reasonable jury could find that the actors committed armed robbery.
Defendant contends that the court abused its discretion by charging the jury that his absence from trial could be considered as consciousness of guilt. Defendant urges that this instruction was contrary to the waiver principle expressed in State v. Whaley, 168 N.J. 94, 99, 773 A.2d 61 (2001), and embodied in R. 3:16(b), which provides, in pertinent part:
(b) At Trial or Post-conviction Proceedings.

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.
The court gave the following charge to the jury with regard to defendant's absence at trial:
Now, in this case, the defendant, Mr. Horne, has not been present for the duration of the trial. His absence was not excused by the Court. Now, in the beginning of the case I asked you if whether or not someone was present or not in and of itself would cause you not to be able to be a juror, and you all said no, I can be a juror, I'll be in the case and I'll decide it. However, when I instruct you in the law, you may infer, if you wish, by his lack of presence, as I instruct you here. You don't have to, and merely because I'm instructing you in this doesn't mean that I'm directing you to follow it. I must instruct you in all aspects of the law. Simply because I give you a charge doesn't mean that I'm telling you what you must do, I'm simply telling you here's the law that you have *961 to apply, and you apply it as you deem fit to the facts of the particular case.
If you find that the defendant, Mr. Horne, fearing that a conviction would result against him on the charges involved in the indictment, took refuge in flight for the purpose of evading conviction of that charge, then you may consider such flight, in consideration and connection with all the other evidence in the case, as an indication of proof of consciousness of guilt. The flight can only be considered as evidence of consciousness of guilt if you should determine that his purpose in leaving was to evade conviction for the offense charged in the indictment.
If, after consideration of the evidence, you find that the defendant, fearing a conviction would result against him by not appearing at trial on the charge involved in the indictment, took refuge in flight for the purpose of evading a conviction, then you may consider such flight, in connection with all the other evidence, because the State has to prove its case beyond a reasonable doubt, as an indication of proof of consciousness of guilt. It is for you, the judges of the facts, to decide whether or not evidence of flight shows a consciousness of guilt and whether you wish to apply it, and the weight, if any, to be given to such evidence in light of all the other evidence in the case.
We have held that a defendant's absence from trial, when there was other evidence that might show consciousness of guilt, could support a jury instruction on flight. State v. Andrial, 203 N.J.Super. 1, 6, 495 A.2d 878 (App.Div.1985). The record in Andrial reasonably supported the conclusion that the motivation for defendant's absence was "his desire to escape the potential consequence of a jury verdict." Pressler, Current N.J. Court Rules, Comment to R. 3:16 (2005). A jury may, under such an analysis, infer from all the circumstances surrounding a defendant's unexcused absence at trial that such absence resulted from a "consciousness of guilt and pursuant to an effort to avoid prosecution based on that guilt." State v. Melendez, 129 N.J. 48, 61, 609 A.2d 1 (1992)(quoting Andrial, supra, 203 N.J.Super. at 7, 495 A.2d 878). While the court may instruct the jury that it could consider flight as evidence of a defendant's guilty conscience, a jury may not, however, infer guilt based on a defendant not testifying at trial. See, e.g., Melendez, supra, 129 N.J. at 53, 609 A.2d 1.
The threshold issue here is whether defendant's absence from trial constitutes a "flight" as that term is used in Andrial and Melendez. In those cases, the defendants failed to return to trial after initially appearing. Here, however, defendant never appeared, and was therefore tried in absentia. The failure to appear for trial does not necessarily constitute flight, as that term is commonly used. Moreover, the Model Jury Charge for flight employs traditional concepts regarding that term, which entails fleeing or evading.[1] This *962 construction would appear to comport with the defendants' actions in Andrial and Melendez in that a reasonable inference could be drawn that those defendants fled the trial due to consciousness of guilt.
If defendant, as the State contends, waived his right to trial by failing to appear, his action was within the purview of R. 3:16(b). It appears logically inconsistent to attach a flight charge to behavior sanctioned by rule. We note, in this connection, that the "waiver" language of the present R. 3:16 was not part of the Rule when Melendez and Andrial, supra, were decided. A defendant who exercises his right of waiver under R. 3:16(b) would otherwise do so with the onus of facing a highly prejudicial jury charge.
Here, the distinction drawn by the trial court is that the flight charge here was appropriate because defendant's absence was "unexcused." After defense counsel argued that defendant would be prejudiced as a result of exercising his right under R. 3:16, the court held:
If I were to follow the request of the defense, then one could, with impunity, abandon trial at any stage of the proceedings and determine that they could frustrate the interests of justice by such things as we have in this case, such as having to use photos instead of the person in court, not being able to have a victim identify his assailant or her assailant in court, all of those things that can't be done when an individual is not here.
Still, that can be done if it's done in the appropriate legal manner. The appropriate legal manner is not not to show up, not to have people close doors at your last known address and to run when confronted with authorities that come to the door, but rather to come to court, say to the Court I choose not to participate in my case, I will be right outside the hall, I'll be downstairs, I'll be at my lawyer's office, I'll be someplace that you could get me at every time, so that each day I could say to him to come to court if you wish to come to court. If you don't wish to, fine, please remain at your lawyer's office, please remain out in the hallway, please remain on the next floor with one of the officers.
That was not done. Consequently, it cannot be argued that a flight charge should not be given based upon someone exercising their constitutional rights. If you want to exercise your constitutional rights, truly want to do it, then you do it in the appropriate manner which is available to you.
There appear to be two flaws in the court's analysis. First, the frustration of the interests of justice that the court refers to may result not only from an "unexcused" absence, but also where the defendant's absence was sanctioned. In the event of an excused absence, witnesses would still be limited to identifying "photos instead of the person in court," and the victim would still be unable to "identify his assailant or her assailant in court." Second, and more importantly, the court provides no basis in law for the application of an "excused/unexcused" test for purposes of R. 3:16(b). The court rejected defense counsel's waiver argument based on defendant's waiver not being done in "the appropriate legal manner." In addition to there being no basis in R. 3:16 for attaching this condition, it does not appear to have the effect that the court suggests. *963 The court does not delineate how the impact on a trial differs when a defendant is absent but under custody, compared to a situation where the absence is unexcused and the defendant is missing. In either scenario, the interests of justice are frustrated, and the effect on the jury is identical. Additionally, the "consciousness of guilt" may be equal in both scenarios since it is the defendant's decision to be absent from trial in both situations that serves as the basis for this inference.
We conclude it is error to give a flight charge in situations where pursuant to R. 3:16(b) a defendant waives his right to be present at trial through an unexcused absence. Failure to appear at trial does not constitute flight as that term was intended to infer consciousness of guilt. The Supreme Court held in State v. Long, 119 N.J. 439, 499, 575 A.2d 435 (1990), "[f]light requires departure from a crime scene under circumstances that imply consciousness of guilt." In State v. Mann, 132 N.J. 410, 418, 625 A.2d 1102 (1993), the Court observed that "[e]vidence of conduct of an accused subsequent to the offense charged is admissible only if probative of guilt.... Evidence of flight or escape from custody by an accused generally is admissible as demonstrating consciousness of guilt, and is therefore regarded as probative of guilt." In these cases, the Court refers to the typical situation involving flight where a defendant has fled apprehension thereby giving rise to an inference of guilt. In these scenarios, the probative value of this flight evidence is not substantially outweighed by the resultant prejudice to the defendant. See N.J.R.E. 403 (setting forth the standard for the exclusion of relevant evidence on the grounds of prejudice, confusion, or waste of time).
In the case of an absentee defendant, however, the facts relating to the absence are unknown. The absence from trial is not necessarily probative of guilt at all, but is highly prejudicial under any circumstances. Further, the totality of the circumstances in which the jury is charged to infer a consciousness of guilt is limited to the record. Therefore, the circumstances necessary to evaluate the defendant's absence are not made available to the jury. For example, it may not be known at the time of deliberations whether the defendant has fled the state, or is incapacitated somewhere, unable to attend trial. Essentially, therefore, the jury is provided with a potentially circular instruction, one that permits an inference of guilt based on the defendant's absence if the proofs tend to support a finding of guilt in the first place.
From an evidential standpoint, an unexcused absence from trial is not necessarily probative of a consciousness of guilt. There are a considerable number of other factors that could account for a defendant's absence, e.g., fear, incapacitation, mistake, etc. Therefore, absence from trial alone as an indicator of guilt is of low probative value. An instruction to the jury, however, that permits an inference of guilt based on this absence is highly prejudicial. The fact that the charge only permits that this inference be drawn, and does not require it, does not cure it of its evidential infirmity because of the dearth of proofs relating to the absence before the jury. Additionally, as a practical matter, a defendant's absence that constitutes a waiver of his presence from trial under R. 3:16(b) does little or nothing to prevent him or her from being brought to justice. By that time, the defendant presumably would have been charged and arraigned and because of the waiver the jury could hear the case and reach a verdict despite his or her absence.
We reject the State's contention that the giving of the flight charge here was harmless error. The State contends *964 that "an erroneous flight charge should not be cause for reversal if the evidence of defendant's guilt is clear and uncontradicted." That contention is, however, unpersuasive on this record. Here, although the jury was presented with particular evidence of defendant's guilt, including both an in-court identification by the victim, and physical evidence belonging to defendant, the evidence was hardly so compelling as to render the flight charge incapable of producing an unjust result, and therefore harmless. R. 2:10-2; compare State v. Macon, 57 N.J. 325, 337-38, 273 A.2d 1 (1971) with State v. Pillar, 359 N.J.Super. 249, 820 A.2d 1 (App.Div.), certif. denied, 177 N.J. 572, 832 A.2d 322 (2003) (illustrating what errors constitute harmless errors). Moreover, noting the prejudice to defendant inherent in the erroneous flight charge, and applying Pillar, supra, we are "unable to conclude beyond a reasonable doubt that ... [the error] did not contribute to his conviction." 359 N.J.Super. at 280, 820 A.2d 1. As a result we reverse the convictions appealed from and remand for a new trial.
This disposition renders it unnecessary to consider all other points raised by defendant, including the sentencing issues, such as defendant's reliance on the United States Supreme Court's recent holding in Blakely v. Washington, ___ U.S. ___, 124 S. Ct. 2531, 159 L.Ed.2d 403, reh'g denied, ___ U.S. ___, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004), and his claim that the sentence imposed on him was unconstitutional under Blakely principles since it exceeds the maximum authorized by the jury's verdict.
Reversed and remanded.
NOTES
[1] The Model Jury Charge for "Flight" reads:

There has been some testimony in the case from which you may infer that the defendant fled shortly after the alleged commission of the crime. The defendant denies any flight (or, the defendant denies that the acts constituted flight). The question of whether the defendant fled after the commission of the crime is another question of fact for your determination. Mere departure from a place where a crime has been committed does not constitute flight. If you find that the defendant, fearing that an accusation or arrest would be made against (him/her) on the charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all the other evidence in the case, as an indication or proof of consciousness of guilt. Flight may only be considered as evidence of consciousness of guilt if you should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment.